United States District Court
Southern District of Texas
**ENTERED**
August 03, 2017
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| CLING MARK BAYNARD (#1729758) <br> Petitioner | § § § | |
| vs. | § § § | CIVIL ACTION NO. M-15-146 |
| LORIE DAVIS <br> DIRECTOR, TEXAS DEPARTMENT <br> OF CRIMINAL JUSTICE, CORRECTIONAL <br> INSTITUTIONS DIVISION <br> Respondent | § § § § § | |

## REPORT & RECOMMENDATION

Petitioner, a state prisoner proceeding pro se, filed an application for relief pursuant to 28 U.S.C. § 2254. (Dkt. Entry No. 1.) This case was referred to the undersigned pursuant to 28 U.S.C. § 636(b). Respondent filed an answer. (Dkt. Entry No. 8.) Petitioner filed a response to the answer. (Dkt. Entry No. 11.) This case is ripe for disposition on the record.

After careful review of the record and the applicable law, the undersigned respectfully recommends that Petitioner's claims under 28 U.S.C. § 2254 be **DENIED** and **DISMISSED** with prejudice and the case be closed.

### I. BACKGROUND

Petitioner is currently in the custody of the Texas Department of Criminal Justice ("TDCJ") pursuant to a judgment and sentence from the 93rd Judicial District Court of Hidalgo County, Texas, in cause number CR–1284–11–B. (Dkt. Entry No. 1 at 1.) Petitioner was charged by indictment with possession of a usable quantity of marijuana in an amount of 2,000 pounds or less, but more

1

than 50 pounds, to which he pled not guilty. (Dkt. Entry No. 8 at 3.) A jury found Petitioner guilty as alleged in the indictment and, on July 20, 2011, sentenced him to forty years' imprisonment. (*Id.*)

On October 18, 2012, the Thirteenth Court of Appeals of Texas affirmed the judgment of the trial court. *Baynard v. State*, No. 13–11–00740–CR, 2012 WL 5188075, *1 (Tex. App.—Corpus Christi 2012, pet. ref'd). The Texas Court of Criminal Appeals ("TCCA") refused his petition for discretionary review on March 20, 2013. (Dkt. Entry No. 1 at 3.) Petitioner also filed a petition for writ of certiorari with the Supreme Court, but the petition was denied on October 7, 2013. (*Id.*)

On June 16, 2014, Petitioner filed a pro se application for a state writ of habeas corpus pursuant to Article 11.07 of the Texas Code of Criminal Procedure challenging this conviction. (Dkt. Entry No. 8.) On February 4, 2015, The TCCA denied the state habeas application without written order, on the findings of the trial court. (*Id.*) Petitioner timely filed this instant federal petition on March 24, 2015.

## II. SUMMARY OF THE PLEADINGS

Consistent with Respondent's construction of the claims, which Petitioner does not contest in his response to the Respondent's Response, the undersigned finds that Petitioner asserts the following claims in his application:

(1) Trial counsel rendered ineffective assistance by failing to contest the State's case in its entirety at the suppression hearing—in particular, the validity of the traffic stop.

(2) Trial counsel rendered ineffective assistance for failing to use any peremptory or for cause challenges to strike juror number 7.

Respondent argues the claims are conclusory and fail on the merits under *Strickland* and AEDPA's deferential standards of review. (*See* Dkt. Entry No. 8.) Petitioner filed a response to Respondent's response, which the undersigned will address as relevant in Section IV of this Report.

### III. AEDPA'S STANDARD OF REVIEW

Under AEDPA, a "[c]ourt may not issue a writ of habeas corpus for a defendant convicted under a state judgment unless the adjudication of the claim by the state court '(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.'" *Riddle v. Cockrell*, 288 F.3d 713, 716 (5th Cir. 2002) (citing 28 U.S.C. § 2254(d)(1)–(2)). "A state-court decision is contrary to clearly established federal law if it 'identifies the correct governing legal rule from [the Supreme Court's] cases but unreasonably applies it to the facts of the particular state prisoner's case' or 'extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.'" *Shore v. Davis*, 845 F.3d 627, 631 (5th Cir. 2017) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)). The focus of the "unreasonable application" query is "on whether the state court's application of clearly established federal law is objectively unreasonable," and the Supreme Court has emphasized repeatedly that "an unreasonable application is different from an incorrect one." *Bell v. Cone*, 535 U.S. 685, 694 (2002) (citation omitted). "An unreasonable application does not arise simply because the federal habeas court "concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 411 (internal quotations omitted).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Woods v. Etherton*, 136 S. Ct. 1149, 1151 (2016) (citing *Harrington v. Richter*, 562 U.S. 86, 101 (2011)) (internal quotations omitted). "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103.

"When the claim at issue is one for ineffective assistance of counsel, moreover, AEDPA review is 'doubly deferential,' *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011), because counsel is 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment,' *Burt v. Titlow*, 134 S. Ct. 10, 17 (2013) (quoting *Strickland v. Washington*, 466 U.S. 668, 690 (1984)." *Etherton*, 136 S. Ct. at 1151. "In such circumstances, federal courts are to afford 'both the state court and the defense attorney the benefit of the doubt.'" *Id.* (quoting *Burt*, 134 S. Ct. at 13).

Under 28 U.S.C. § 2254(e)(1), a determination of a factual issue made by a state court is presumed to be correct, and the habeas petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. *Hoffman v. Cain*, 752 F.3d 430, 437 (5th Cir. 2014). "When ruling on a petition for a writ of habeas corpus, the federal district court must defer to the factual findings of state trial and habeas courts." *Shore*, 845 F.3d at 631 (citing *Moody v. Quarterman*, 476 F.3d 260, 267–68 (5th Cir. 2007), and *Young v. Dretke*, 356 F.3d 616, 629 (5th Cir. 2004)). "Federal courts are limited to the record before the state courts." *Id.* (citing *Cullen*, 563

U.S. 170 at 181). "The district court reviews 'only the ultimate legal determination by the state court—not every link in its reasoning.'" *Trottie v. Stephens*, 720 F.3d 231, 241 (5th Cir. 2013).

State courts are not required to explain their appellate or habeas decisions to be entitled to AEDPA deference, which means that, when the claims are adjudicated on the merits, section 2254(d) applies even if the state court summarily denied relief. *Cullen*, 563 U.S. at 187–88; *Harrington*, 562 U.S. at 100. "Where a state court habeas decision is unaccompanied by explanation, 'a federal court must 'determine what arguments or theories . . . could have supported the state court's decision,' and then ask 'whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision' of the Supreme Court." *Shore*, 845 F.3d at 631–32 (quoting *Harrington*, 562 U.S. at 88).

## IV. ANALYSIS & CONCLUSIONS

**Claim 1**

In his first claim, Petitioner argues that counsel failed to contest the State's case in its entirety at Petitioner's suppression hearing. (Dkt. Entry No. 1 at 6.) In his reply to the Respondent's Response, Petitioner goes into further detail to explain that counsel performed unreasonably by not calling the DPS trooper (Tijerina), who personally initiated the stop of the truck Petitioner was driving, to testify at the suppression hearing, and the only witness to testify was a DPS Narcotic Agent (Villafranca) who did not conduct the initial stop and only witnessed the stop from a distance. (Dkt. Entry No. 11 at 2–3.) Petitioner argues that, at the suppression hearing, Agent Villafranca could not reasonably explain the basis for the stop by Trooper Tijerina, and Villafranca's testimony raised doubts about whether the stop was lawful, given that she hesitated or could not confirm that the stop was based on the illegal use of a turn signal. Further, Petitioner points to Tijerina's

5

testimony at trial to show that the probable cause for the stop was lacking because Tijerina testified that the stop was based on the unlawful extended use of the turn signal without turning or changing lanes, which Petitioner argues is not in fact a violation of State law. (*Id.* at 3–5.) According to Petitioner, the stop, his detention, and the search were unreasonable and unlawful and would have led to the suppression of all the evidence. (*Id.* at 6.)

The record reflects that a suppression hearing was held before trial, and the main focus of the hearing was on the pre-surveillance intelligence, which included a tip, the pre-stop surveillance of Petitioner, and the subsequent stop of the vehicle Petitioner was driving. (Dkt. Entry No. 5-9 at 48–50.) The trial court denied counsel's Motion to Suppress Physical Evidence, which challenged the evidence seized as a result of Petitioner's arrest, and counsel's Motion to Suppress Petitioner's Written or Oral Statements, made as a result of custodial interrogation. (Dkt. Entry No. 5-16 at 27; No. 5-17 at 6–7.) Again, the only witness called at the suppression hearing was Agent Villafranca, who did not personally conduct the stop. (*See id.*)

The state habeas record reflects that the State responded to this claim raised in Petitioner's state habeas application as follows:

> In light of the evidence adduced at the suppression hearing a challenge to the "improper use of a turn signal" would not have challenged every basis for the stop. Applicant was driving the vehicle, and was stopped by a Department of Public Safety (DPS) Trooper. Said Trooper was directed to initiate a stop against Applicant's vehicle because the Investigating officer had reason to believe that the vehicle (suspect vehicle) and trailer was transporting drugs. The Drug Enforcement Agency (DEA) taskforce had received information that drugs would be transported in the in an F350 with a fifth wheel (suspect vehicle). 6 RR 6. After following the suspect vehicle, DEA taskforce members observed the vehicle pulling into a HEB. 6 RR 7. The driver and passenger exited the vehicle and proceeded to enter a black truck and leave the HEB parking lot. Id. Said vehicle was followed by members of the surveillance team. 6 RR 14. Other members of the team observed Applicant and another individual walk up to and enter the suspect vehicle. Applicant entered the driver's seat. 6 RR 7-8. The vehicle then exited the parking lot and headed drove to

>  Expressway 83. 6 RR 8. The suspect vehicle headed east on Expressway 83, the Taskforce continues surveillance to determine the route the suspect, vehicle would use to head north out of the Rio Grande Valley. 6 RR 17-18. After determining that it was likely that the vehicle would use Highway 77 to head north Agent Villafranca directed Trooper Tijerina to execute a traffic stop. 6 RR 9; l8. The State would note that at this point, when viewed in the light most favorable to the ruling, Agent Villafranca had reasonable suspicion under the totality of the circumstances to believe that Applicant was violating the law by transporting drugs. The agents observed the vehicle matching the description of the tip being dropped off in a parking lot; observed the initial driver and passenger exit the vehicle; and say Applicant and another individual get into the vehicle; the officers observed that neither Applicant nor the other individual were carrying groceries when the exited the HEB and got into the suspect vehicle. If credited this would support the temporary detention. As such, the Trial Court properly ruled that the stop was lawful. The subsequent search was conducted based upon the verbal consent of Applicant. 6 RR 10. Given that the trial Court found the stop was lawful and Applicant cannot show that his consent was coerced it would have been futile for trial counsel to have objected to admissibility of the recovered drugs.

(Dkt. Entry No. 6-19 at 93–94.)

In its findings of fact, which the TCCA adopted in denying relief, the state habeas trial court summarized the facts presented as follows:

>  The Drug Enforcement Agency (DEA) taskforce had received information that drugs would be transported . . . in a F350 with a fifth wheel (suspect vehicle). After following the suspect vehicle, DEA taskforce members observed the vehicle pulling into a HEB. The driver and passenger exited the vehicle and proceeded to enter a black truck and leave the HEB parking lot. [The black truck] was followed by members of the surveillance team. Other members of the team observed [Baynard] and another individual walk up to and enter the suspect vehicle. [Baynard] entered the driver's seat. The vehicle then exited the parking lot and . . . drove to Expressway 83. [Baynard] was driving the vehicle, and was stopped by a Department of Public Safety (DPS) Trooper. Said Trooper was directed to initiate a stop against [Baynard's] vehicle because the Investigating [O]fficer had reason to believe that the vehicle . . . and trailer [were] transporting drugs.

(Dkt. Entry No. 6-13 at 99–100.)

The record, including the suppression hearing transcript, also reflects that, after the Trooper initiated the traffic stop, Petitioner gave verbal consent for the vehicle and trailer to be searched.

7

8 RR 177–178. After entering the trailer, the Investigating Officer noticed that there were unusual mirrors along one of the walls. *Id.* at 180. The Investigating Officer and the Trooper used a crowbar and removed one of the mirrors. *Id.* at 181. Behind it were bundles of marijuana wrapped in industrial tape. *Id.* Two other officers arrived, and the vehicle and trailer were driven to the McAllen DPS office, and the marijuana was unloaded. *Id.* at 182. The officers removed 113 bundles, and the total weight was 1,388 pounds. *Id.* at 195.

As part of the state habeas proceeding, counsel tendered an affidavit. (Dkt. Entry No. 6-13 at 89.) In it, he explained that "my concern on [the] motion to suppress was not the improper stop but that of the statement of defendant." (*Id.*) "For trial strategy purposes my main focus was the statement given by my client/defendant at the time of the arrest." (*Id.*) [1]

The state habeas trial court specifically stated in its conclusions of law that:

> 5. There existed independent grounds to conduct the temporary detention, even without regard to the improper use of a turn signal. Therefore, trial counsel cannot be ineffective for not presenting this contention during the suppression hearing.
>
> 6. Applicant was given a full and fair hearing on his motion to suppress.

(Dkt. Entry No. 6-13 at 102.) The TCCA denied Petitioner's state writ based on the findings of the trial court.

This claim is subject to review under the strict standards set forth under AEDPA and Supreme Court precedent interpreting ineffective-assistance claims, which requires federal courts to apply double deference to *Strickland* claims under AEDPA. Also, the Supreme Court has held that "[w]here defense counsel's failure to litigate a Fourth Amendment claim competently is the

---

[1] A review of the trial proceedings reflects that counsel's overall strategy at trial was that Petitioner did not know or realize he was transporting drugs in the vehicle he was driving.

8

principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice. *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986). Under *Strickland*, the state habeas trial court concluded that counsel was not ineffective for failing to press the basis for the stop because law enforcement had a lawful basis to stop the vehicle, regardless of the turn-signal issue, which is the primary complaint by Petitioner. The state habeas trial court's finding number 2 on this issue expressly explains the court's reasoning for this claim, which, in turn, was adopted by the TCCA.

Petitioner does not respond to these findings and conclusions. Instead, he focuses on the issue of the turn signal and his belief that the officers did not provide credible or sufficient testimony to provide a lawful justification for the stop based on the turn signal, suggesting that the stop was pre-textual or that the officers were not being truthful. He also mistakenly complains that a stop can only be justified if there is traffic infraction under state law. However, his complaints are insufficient to undermine the state courts' conclusion that the officer(s) had reason to believe the suspect vehicle was transporting drugs. *See, e.g., United States v. Arvizu*, 534 U.S. 266, 273 (2002) ("To find that reasonable suspicion existed to justify a stop, a court must examine the 'totality of the circumstances' in the situation at hand, in light of the individual officers' own training and experience, and should uphold the stop only if it finds that 'the detaining officer ha[d] a 'particularized and objective basis' for suspecting legal wrongdoing.'") (quoting *United States v. Cortez*, 449 U.S. 411, 417–18 (1981)); *Navarette v. California*, 134 S. Ct. 1683, 1687 (2014) ("Although a mere 'hunch' does not create reasonable suspicion, . . . the level of suspicion the standard requires is 'considerably less than proof of wrongdoing by a preponderance of the

9

evidence,' and 'obviously less' than is necessary for probable cause") (citations omitted); *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004) (explaining that a rule that the offense establishing probable cause must be "closely related" to, and based on the same conduct as, the offense identified by the arresting officer at the time of arrest is inconsistent with the Court's precedent); *United States v. Alvarado-Zarza*, 782 F.3d 246, 249 (5th Cir. 2015) (explaining that under *Terry v. Ohio*, "police officers may stop and briefly detain an individual if they reasonably suspect that criminal activity is occurring or about to occur," and explaining that "[r]easonable suspicion exists if the police officer can point to specific and articulable facts indicating that criminal activity is occurring or is about to occur"); *see also United States v. Carmenate*, 344 F. App'x 941, 942 (5th Cir. 2009) (unpublished) ("*Even in the absence of a traffic violation*, however, the record reflects that the stop at issue herein was constitutionally permissible at its inception, based on the collective knowledge of all the officers involved, which gave rise to a reasonable suspicion that criminal activity might be afoot.") (emphasis added).  Under AEDPA, a determination of a factual issue made by a state court is presumed to be correct, and the habeas petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence, which Petitioner fails to do in this case. *See, e.g.*, *Shore*, 845 F.3d at 631 ("When ruling on a petition for a writ of habeas corpus, the federal district court must defer to the factual findings of state trial and habeas courts."); *Moody*, 476 F.3d at 267 ("A 'state court's factual findings are presumed to be correct unless contravened by clear and convincing evidence' under § 2254(e)(1)").

Further, it was not an unreasonable application of *Strickland* and its progeny for the state court to deny relief because the motion to suppress based on the stop would have been unavailing because, according to the state courts, the stop was lawful, which means it was not deficient for

10

counsel to pursue an unprevailing issue and, concomitantly, there is a lack of a reasonable probability that the outcome would have been different, but for counsel's alleged error. *See, e.g.*, *Kimmelman*, 477 U.S. at 375 (explaining that, in the context of a Fourth Amendment-based *Strickland* claim, the defendant must prove that his Fourth Amendment claim would be meritorious); *Knowles v. Mirzayance*, 556 U.S. 111, 127 (2009) ("The law does not require counsel to raise every available nonfrivolous defense."); *United States v. Kimler*, 167 F.3d 889, 893 (5th Cir.1999) (explaining that an attorney's failure to raise a meritless or unavailing argument . . . "cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue"). Although counsel *could have* filed a motion to suppress based on Petitioner's proposed basis, the Supreme Court has stated that defense counsel's performance is not evaluated under a "nothing to lose" standard. *See Knowles*, 129 S. Ct. at 1419. In light of the state court findings and relevant law, Petitioner fails to show that the state court's denial of relief was contrary or unreasonable under AEDPA. *See, e.g.*, *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) ("The 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous.").

**Claim 2**

In his second claim, Petitioner argues that counsel was ineffective for not attempting to strike juror number 7 for cause or on a peremptory basis because of the juror's equivocal statements about whether or not she would find it difficult to be fair. (Dkt. Entry No. 11 at 9.) Also, Petitioner argues that counsel is not being truthful in his responsive affidavit because Petitioner never told counsel that he thought juror number 7 might be helpful or useful to his case. (*Id.*)

11

The habeas record reflects that the state habeas trial court found counsel's affidavit to be credible and concluded as follows: "Applicant's trial counsel, Armando Marroquin, submitted credible affidavit testimony that "Applicant requested that juror 7 be left on the panel," and "Applicant cannot now complain that the Mr. Marroquin followed to his request." (Dkt. Entry No. 6-13 at 102, Conclusion No. 4.) The record shows that counsel originally joined the State in challenging juror number 7 (Dkt. Entry No. 5-19 at 34–35), but later counsel told the trial court he had no problem if the State wanted to strike juror number 7, adding, however, that the defense would not be joining in it. (Dkt. Entry No. 5-19 at 128.) The trial court denied the State's request to strike juror number 7. (Dkt. Entry No. 5-19 at 128.)

The undersigned finds that Petitioner fails to overcome the deference shown to or correctness of the state court's findings on this issue with only his simple protestations about the lack of veracity of counsel's responsive affidavit. The undersigned also finds that the TCCA's denial of this *Strickland* claim was not unreasonable or contrary based on the trial court's conclusion that counsel's affidavit was credible, and the conclusion that Petitioner cannot show deficient performance or prejudice when counsel followed his client's instruction about the juror. Petitioner fails to demonstrate that the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" under the rigorous standard that the "state court decision must be so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Woods*, 136 S. Ct. at 1151 (quoting *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014)). Accordingly, Petitioner's second claim should be denied and dismissed.

Based on the foregoing, the Court should conclude that Petitioner is not entitled to federal habeas relief for either of his claims.

## V. CONCLUSION

### *Recommended Disposition*

After careful review of the record and applicable law, the undersigned respectfully recommends that Petitioner's claims under 28 U.S.C. § 2254 be **DENIED** and **DISMISSED** with prejudice and the case be closed.

The undersigned also respectfully recommends that the District Court deny a Certificate of Appealability upon issuance of its final order in this section 2254 proceeding. The undersigned finds that the record supports the conclusion that Petitioner fails to show that reasonable jurists would find this Court's "assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing 28 U.S.C. § 2253(c)).

### *Notice to the Parties*

Within 14 days after being served a copy of this report, a party may serve and file specific, written objections to the proposed recommendations. A party may respond to another party's objections within 14 days after being served with a copy thereof. The district judge to whom this case is assigned shall make a *de novo* determination upon the record, or after additional evidence, of any portion of the magistrate judge's disposition to which specific written objection has been made. The district judge may accept, reject, or modify the recommended decision, receive further evidence, or recommit the matter to the magistrate judge with instructions.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen days after service shall bar an aggrieved party from *de novo* review by

the District Court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the District Court, except on grounds of plain error or manifest injustice.

The clerk of this Court shall forward a copy of this document to the parties by any receipted means.

**DONE** at McAllen, Texas, this 3rd day of August, 2017.

\_\_\_\_\_*Dorina Ramos*\_\_\_\_\_
Dorina Ramos
UNITED STATES MAGISTRATE JUDGE